# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF PUERTO RICO

ROSA VALENTÍN MARTELL,

    Plaintiff,

    v.

COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

CIVIL NO.: 16-2916 (MEL)

## OPINION AND ORDER

Pending before the court is Rosa Valentín Martell's ("Plaintiff") appeal from the decision of the Commissioner of Social Security ("the Commissioner") denying her application for disability benefits under the Social Security Act. ECF No. 20. Plaintiff contends that the administrative law judge did not properly evaluate all of her alleged impairments, and therefore, did not present the vocational expert with an accurate hypothetical at step five of the sequential process. It is also claimed by Plaintiff that the administrative law judge erred in not finding her allegations credible and not explaining the weight given to each medical opinion.

### I.     Procedural and Factual Background

On January 28, 2011, Plaintiff filed an application for Social Security benefits alleging that on September 28, 2010 ("the onset date"), she became unable to work due to disability. Tr. 21-22.[1] Prior to becoming unable to work, Plaintiff worked as a microbiologist, chemical operator, and lens fabricating machine tender. Tr. 36. Plaintiff's disability claim was denied on August 23, 2011, and upon reconsideration. Tr. 21. Thereafter, Plaintiff requested a hearing which was held on February 22, 2013, before Administrative Law Judge Gerardo R. Picó ("the

---

[1] "Tr." refers to the transcript of the record of proceedings.

ALJ"). Tr. 81-96. On March 25, 2013 the ALJ issued a written decision finding that Plaintiff was not disabled. Tr. 259. Thereafter, Plaintiff requested review of the ALJ's decision. The Appeals Council reviewed the appeal and remanded the decision to the ALJ to "obtain additional evidence concerning the claimant's physical and mental impairments" and "further evaluate the claimant's subjective complaints." Tr. 264-69. Plaintiff appeared before the ALJ for a second hearing on March 25, 2015. Tr. 45-80. An unfavorable decision was issued by the ALJ on May 12, 2015. Tr. 15-38. The Appeals Council denied Plaintiff's second request for review, rendering the ALJ's decision the final decision of the Commissioner of Social Security, subject to judicial review. Tr. 1-5. Plaintiff filed a complaint on November 3, 2016. ECF No. 1. Both parties have filed supporting memoranda. ECF Nos. 20, 21.

## II. Legal Standard

### A. Standard of Review

Once the Commissioner has rendered a final determination on an application for disability benefits, a district court "shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing [that decision], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). The court's review is limited to determining whether the ALJ employed the proper legal standards and whether his factual findings were founded upon sufficient evidence. Specifically, the court "must examine the record and uphold a final decision of the Commissioner denying benefits, unless the decision is based on a faulty legal thesis or factual error." López-Vargas v. Comm'r of Soc. Sec., 518 F. Supp. 2d 333, 335 (D.P.R. 2007) (citing Manso-Pizarro v. Sec'y of Health & Human Servs., 76 F.3d 15, 16 (1st Cir. 1996) (per curiam)).

Additionally, "[t]he findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). The standard requires "'more than a mere scintilla of evidence but may be somewhat less than a preponderance' of the evidence." Ginsburg v. Richardson, 436 F.2d 1146, 1148 (3d Cir. 1971) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)).

While the Commissioner's findings of fact are conclusive when they are supported by substantial evidence, they are "not conclusive when derived by ignoring evidence, misapplying the law, or judging matters entrusted to experts." Nguyen v. Chater, 172 F.3d 31, 35 (1st Cir. 1999) (per curiam) (citing Da Rosa v. Sec'y of Health & Human Servs., 803 F.2d 24, 26 (1st Cir. 1986) (per curiam); Ortiz v. Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam)). Moreover, a determination of substantiality must be made based on the record as a whole. See Ortiz, 955 F.2d at 769 (citing Rodríguez v. Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981)). However, "[i]t is the responsibility of the [ALJ] to determine issues of credibility and to draw inferences from the record evidence." Id. Therefore, the court "must affirm the [Commissioner's] resolution, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." Rodríguez Pagán v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam).

**B. Disability under the Social Security Act**

To establish entitlement to disability benefits, a plaintiff bears the burden of proving that he is disabled within the meaning of the Social Security Act. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5, 146–47 (1987). An individual is deemed to be disabled under the Social Security

Act if he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

Claims for disability benefits are evaluated according to a five-step sequential process. 20 C.F.R. § 404.1520; Barnhart v. Thomas, 540 U.S. 20, 24–25 (2003); Cleveland v. Policy Mgmt. Sys. Corp., 526 U.S. 795, 804 (1999); Yuckert, 482 U.S. at 140–42. If it is determined that plaintiff is not disabled at any step in the evaluation process, then the analysis will not proceed to the next step. 20 C.F.R. § 404.1520(a)(4). At step one, it is determined whether plaintiff is working and thus engaged in "substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If he is, then disability benefits are denied. 20 C.F.R. § 404.1520(b). Step two requires the ALJ to determine whether plaintiff has "a severe medically determinable physical or mental impairment" or severe combination of impairments. 20 C.F.R. § 404.1520(a)(4)(ii). If he does, then the ALJ determines at step three whether plaintiff's impairment or impairments are equivalent to one of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. § 404.1520(a)(4)(iii). If so, then plaintiff is conclusively found to be disabled. 20 C.F.R. § 404.1520(d). If not, then the ALJ at step four assesses whether plaintiff's impairment or impairments prevent him from doing the type of work he has done in the past. 20 C.F.R. § 404.1520(a)(4)(iv). In assessing an individual's impairments, the ALJ considers all of the relevant evidence in the case record to determine the most the individual can do in a work setting despite the limitations imposed by his mental and physical impairments. 20 C.F.R. § 404.1545(a)(1). This finding is known as the individual's residual functional capacity ("RFC"). Id. If the ALJ concludes that plaintiff's impairment or impairments do prevent him

from performing his past relevant work, the analysis proceeds to step five. At this final step, the ALJ evaluates whether plaintiff's RFC, combined with his age, education, and work experience, allows him to perform any other work that is available in the national economy. 20 C.F.R. § 404.1520(a)(4)(v). If the ALJ determines that there is work in the national economy that plaintiff can perform, then disability benefits are denied. 20 C.F.R. § 404.1520(g).

**C. The ALJ's Decision**

In the case at hand, the ALJ found that Plaintiff met the insured status requirements of the Social Security Act through June 30, 2015. Tr. 24. Then, at step one of the sequential evaluation process, the ALJ found that Plaintiff had not engaged in substantial gainful activity during the relevant period. Id. At step two, the inquiry as to severe impairments resulted in the ALJ determining that Plaintiff had the following severe impairments: "cervical and lumbar degenerative disc disease; hypothyroidism; polyarthralgias; brain cyst at the third ventricle (stable); status-post carpal tunnel syndrome; rule-out lupus; status-post dermatitis; obesity; and major depressive disorder, severe, recurrent." Id. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 25. Next, the ALJ determined that during the relevant period

> [Plaintiff] had the residual functional capacity to perform light work as defined in 20 C.F.R. 404.1567(b). The claimant can lift, carry, push, and pull 20 pounds on an occasional basis and 10 pounds frequently. She can sit for six hours in an eight-hour workday, stand for four hours in an eight-hour workday and walk for four hours in an eight-hour workday with normal breaks. The claimant can never climb ladders, ropes, or scaffolds and he [sic] can climb stairs and ramps frequently. The claimant can balance and crouch frequently and she can stoop, kneel, and crawl occasionally. The claimant can finger, handle, and feel frequently. The claimant can occasionally be exposed to unprotected heights, moving mechanical parts, and humidity and wetness. She can be exposed to operating motor vehicles and vibration on a frequent basis. The claimant must avoid extreme cold. As of September 19, 2011, the claimant also has mental limitations. The claimant can

5

remember, understand, and carry out simple tasks. The claimant can sustain concentration for two-hour intervals at a time. Can interact with the public frequently.

Tr. 28. At step four, the ALJ determined that through the date last insured, Plaintiff could not perform her past relevant work as a microbiologist, chemical operator, or lens fabricator machine tender. Tr. 36. At step five, the ALJ presented Plaintiff's RFC limitations, as well as her age, education, and work experience to a vocational expert. Tr. 77-78. The vocational expert testified, taking these factors into account, that an individual would be able to perform the requirements of the following representative occupations: call-out operator, addresser, ampoule sealer. Tr. 78-79. Because there was work in the national economy that Plaintiff could perform, the ALJ concluded that she was not disabled. Tr. 38.

### III. Legal Analysis

Plaintiff objects to the ALJ's final decision denying her disability benefits on several grounds. First, Plaintiff alleges that the ALJ did not properly consider her alleged carpal tunnel syndrome and fibromyalgia. Plaintiff also claims that the ALJ did not properly consider her obesity in assessing her RFC. Lastly, it is alleged by Plaintiff that the ALJ erred in relying on Plaintiff's subjective statements and did not properly weigh medical opinions.

**A. Plaintiff's Alleged Carpal Tunnel Syndrome**

Plaintiff claims that the ALJ erred in not discussing Plaintiff's carpal tunnel syndrome. ECF No. 20, at 23-24. A Motor and Sensory Nerve Conduction Study conducted on October 6, 2009 by examining physiatrist Dr. Jorge Padilla Rodríguez ("Dr. Padilla") revealed there was evidence "suggestive" of "very early" carpal tunnel syndrome. Tr. 71, 889. However, a Electrodiagnostic Report from July 12, 2012 by examining physiatrist Dr. Raúl Llinás Sobrino ("Dr. Llinás") showed no evidence of carpal tunnel syndrome or radiculopathy. Tr. 72, 806-07.

Plaintiff argues that the ALJ did not discuss this inconsistency and should have developed the record. ECF No. 20, at 23-24.

At the hearing, Plaintiff's attorney and the ALJ specifically discussed Plaintiff's alleged carpal tunnel syndrome and the ALJ clarified that the 2009 findings occurred before the alleged onset date. Tr. 72-73. In his decision, the ALJ cited to testimony from medical expert internist Dr. German Malaret ("Dr. Malaret") who reviewed the record and testified that the 2012 Electrodiagnostic Report revealed no evidence of carpal tunnel or radiculopathy. Tr. 33, 63 ("[The study] doesn't show carpal tunnel at all, it's not there. It either got cured or something else happened."). In an abundance of caution, Dr. Malaret opined that Plaintiff would be limited to "frequent handling, fingering, and feeling." Tr. 68 (the ALJ clarified to Dr. Malaret, "I imagine you find that limitation because on record there's at least evidence of a condition at some point."). Accordingly, the ALJ incorporated Dr. Malaret's opinion in the RFC determination. Tr. 28. ("The claimant can finger, handle, and feel frequently").

The ALJ has discretion whether to request additional evidence. See 20 C.F.R. § 404.1520b(b)(1) ("if any of the evidence in your case record . . . is inconsistent, we will consider the relevant evidence and see if we can determine whether you are disabled based on the evidence we have."). In the case at hand, the ALJ considered the relevant evidence in the record and determined that the 2009 finding appeared to be related to a fall from 2009 and the 2012 report by Dr. Llinás did not show evidence of carpal tunnel syndrome or radiculopathy. Tr. 33, 72-73. The ALJ relied upon the medical opinion of Dr. Malaret in interpreting the 2012 findings. Tr. 63. Thus, substantial evidence supports the finding that the ALJ adequately discussed and considered Plaintiff's alleged carpal tunnel syndrome.

### B. Plaintiff's Alleged Fibromyalgia

Plaintiff argues that the ALJ erred in "dismissing" and "minimalizing" Plaintiff's alleged fibromyalgia. ECF No. 20, at 17. Under the regulations, a medically determinable impairment must be demonstrated by "medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). The Commissioner has promulgated rules regarding the analysis of fibromyalgia claims. In order to establish a medically determinable impairment of fibromyalgia,

> [a] licensed physician (a medical or osteopathic doctor) is the only acceptable medical source who can provide such evidence. We cannot rely upon the physician's diagnosis alone. The evidence must document that the physician reviewed the person's medical history and conducted a physical exam. We will review the physician's treatment notes to see if they are consistent with the diagnosis of FM.

SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012). Furthermore, a showing of fibromyalgia requires evidence of "a history of widespread pain," "at least 11 positive tender points on physical examination," and "evidence that other disorders that could cause the symptoms or signs were excluded." See id. at *2-3. Alternatively, under the 2010 Diagnostic Criteria, a claimant must show "a history of widespread pain," "repeated manifestations of six or more [fibromyalgia] symptoms," and "evidence that other disorders that could cause these repeated manifestations of symptoms, signs, or co-occuring conditions were excluded." Id. at *3.

In the case at hand, the ALJ determined that while treating rheumatologist Dr. Dennis F. Suarez ("Dr. Suarez") diagnosed Plaintiff with fibromyalgia, the diagnosis did not satisfy the criteria for a showing of fibromyalgia. Tr. 32. Dr. Suarez's treatment notes do not elaborate on what examination findings corroborated his diagnosis. Tr. 865, 876. Furthermore, while Dr. Suarez's opinion noted tender points, Plaintiff has not cited to other evidence demonstrating that the requirements for a showing of fibromyalgia are met. A diagnosis of fibromyalgia accompanied by the presence of tender points is insufficient to show fibromyalgia. See SSR 12-

8

2p. Substantial evidence supports the ALJ's decision to disregard Plaintiff's fibromyalgia diagnosis because Dr. Suarez's opinion did not include "evidence that other disorders that could cause the symptoms or signs were excluded." See id.

**C. The ALJ's Assessment of Plaintiff's Obesity**

Plaintiff claims that "the ALJ failed to properly assess [P]laintiff's RFC in light of [her] obesity." ECF No. 20, at 25. The ALJ must consider the effects of a claimant's obesity when determining whether a claimant has a medically determinable impairment, the severity of impairments, and whether it prevents her "from doing past relevant work and other work that exists in significant numbers in the national economy." SSR 02-1p, 2002 WL 34686281, at *3-5 (Sept. 12, 2002). The ALJ should "not make assumptions about the severity or functional effects of obesity combined with other impairments" and should "evaluate each case based on the information in the case record." Id. at *6.

In the case at hand, treating internist Dr. Sonia L. Rovira Soto ("Dr. Rovira") reported that Plaintiff had a Body Mass Index of 36, indicating that Plaintiff was obese. Tr. 31, 697. At step two of the sequential process, the ALJ found that Plaintiff had the severe impairment of obesity. Tr. 24, 31, 697. At step three, the ALJ discussed the applicable standard in Social Security Ruling 01-2p and determined that "it was reasonable to conclude that the ability to perform exertional activity at the medium level or greater could be compromised by the claimant's obesity. This condition has been considered in the residual functional capacity assessment." Tr. 31. In the RFC determination, the ALJ found that Plaintiff could perform a reduced range of light work, but with "postural and manipulative limitations" considering her obesity. Tr. 34. Further, the ALJ also determined that Plaintiff had "environmental limitations" and "greater exertional limitations for lifting and carrying imposed by obesity." Tr. 32, 34. Thus,

substantial evidence supports the conclusion that the ALJ properly considered Plaintiff's obesity. Tr. 28.

### D. The ALJ's Step Five Determination

Plaintiff argues that the ALJ erred at step five in the sequential process by not presenting the vocational expert with a hypothetical that conveyed all of Plaintiff's alleged limitations. ECF No. 20, at 14-15. However, this argument relies on Plaintiff's other arguments disputing the ALJ's consideration and findings of Plaintiff's alleged fibromyalgia, carpal tunnel syndrome, and obesity. As stated earlier, substantial evidence supports the ALJ's decision to disregard Dr. Suárez's fibromyalgia diagnosis and find the 2012 report dispositive of the alleged carpal tunnel syndrome. Tr. 32, 33. The ALJ also determined that Plaintiff had the severe impairment of obesity and specifically considered it while making the RFC determination. Tr. 24, 28, 31. Therefore, substantial evidence supports the conclusion that the ALJ properly considered Plaintiff's alleged impairments, and thus, he was permitted to rely on the vocational expert's response to the hypothetical. Tr. 37, 77-79.

### E. Plaintiff's Subjective Statements

The ALJ erred, Plaintiff contends, in concluding that Plaintiff's ability to perform activities of daily living undermined her allegations of disability. ECF No. 20, at 18-20. The ALJ must consider a claimant's symptoms in determining whether the claimant is disabled. See 20 C.F.R. § 404.1529(a). As such, the ALJ will consider a claimant's daily activities in evaluating the "intensity and persistence" of the alleged symptoms to determine the extent to which they limit the claimant's capacity to work. See id. at § 404.1529(c). In his decision, the ALJ found that Plaintiff's allegations were not credible. Tr. 36. The ALJ noted that "the claimant stated that her physical and mental conditions were disabling; however, her activities of daily living

demonstrated otherwise." Tr. 36. Plaintiff argues that the ALJ's interpretation is false "because all of the activities are at her pace." ECF No. 20, at 19.

Plaintiff reported that she took care of her two children, prepared their meals, and took them to school. Tr. 567. Further, her reports included that she drove a car daily (Tr. 569), she walked for exercise (Tr. 570), and she spent time with family every day and attended church every Sunday (Tr. 570-71). Tr. 36. Plaintiff also alleged that she could care for her personal needs independently with some difficulty. Tr. 36, 567. It was concluded by the ALJ that "these are fairly extensive activities of daily living not expected in an individual claiming inability to work." Tr. 36. The ALJ properly considered Plaintiff's daily activities and his credibility determination is supported by specific findings of Plaintiff's self-reported activities. See 20 C.F.R. § 404.1529(c); see Frustaglia v. Sec'y of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) ("the credibility determination by the ALJ . . . is entitled to deference, especially when supported by specific findings.").

**F. The ALJ's Weighing of Medical Opinions**

Plaintiff alleges that the ALJ erred by not considering and explaining the weight given to the medical opinions of record. ECF No. 20, at 21. Plaintiff, however, does not cite to specific evidence challenging the ALJ's weighing of the opinions. The ALJ must evaluate and weigh the medical opinions of record according to several factors: the examining relationship, the treatment relationship, whether the opinion is supported with relevant evidence, and the consistency of the opinion with the record as a whole. See id. at §§ 404.1527(b), (c)(1)-(6).

In the case at bar, the ALJ assigned "great weight" to the opinion of state agency examiner internist Dr. German Malaret who found that Plaintiff "could lift, carry, push, and pull 20 pounds on an occasional basis and 10 pounds frequently. He stated that the claimant could sit

11

for six hours in an eight-hour workday, stand for four hours in an eight-hour workday, and walk for four hours in an eight-hour workday with normal breaks." Tr. 34. The ALJ noted that Dr. Malaret reviewed the complete record and his opinion was "consistent with the clinical signs and medical evidence." Tr. 34. The ALJ also considered state agency medical consultant Dr. Pedro Nieves's opinion that Plaintiff could "perform light work with the ability to perform postural activities on an occasional basis and with manipulative limitations." Tr. 34. The ALJ gave "partial weight" to Dr. Nieves's opinion because the combination of generalized pain, musculoskeletal conditions, and obesity imposed "environmental limitations." Tr. 34.

The ALJ also considered examining orthopedic surgeon Dr. Norberto Báez's ("Dr. Báez") opinion that Plaintiff had almost no limitations. Tr. 31. However, the ALJ gave his opinion "partial weight" because the ALJ found that Plaintiff's "musculoskeletal conditions, generalized pain, and obesity" supported a finding that Plaintiff had greater exertional limitations than those found by Dr. Báez. Tr. 32.

The ALJ gave "little weight" to treating internist Dr. Sonia Rovira's ("Dr. Rovira") April 2011 opinion finding that Plaintiff was unable to work due to limitations imposed by pain. Tr. 30. The ALJ found that the opinion was not supported by her progress notes which were "very general and brief with little detail of the claimant's physical limitations." Id. Dr. Rovira's 2012 and 2015 opinions that assessed more restrictive limitations were given "little weight" because they were both poorly supported by the treatment notes. Tr. 30-31, 783, 784, 946, 947.

Treating rheumatologist Dr. Suárez's opinion received "little weight" from the ALJ who found it was unsupported by Dr. Suárez's own treatment notes and treatment history. Tr. 32. The ALJ noted that Plaintiff only saw Dr. Suárez sporadically during the relevant period, the medical

12

treatment was conservative, and Plaintiff's allegations in the function report contradicted Dr. Suárez's assessment. Tr. 32-33, 567-73.

Regarding Plaintiff's depression, the ALJ considered medical evidence from treating psychiatrist Dr. Ariel Rojas ("Dr. Rojas"), but only assigned "partial weight" to her 2012 opinions because the appointments were sporadic, and the overall record showed claimant was limited to simple tasks. Tr. 35. The ALJ assigned "little weight" to Dr. Rojas' 2015 opinion because there was no referral for psychiatric hospitalizations and treatment occurred every 3 to 5 months which the ALJ found was "inconsistent with the severity that Dr. Rojas stated." Tr. 35. Further, medical expert psychologist Dr. Marieva Puig ("Dr. Puig") testified that Dr. Rojas' progress notes did not support the severity that was described in the checklist forms. Tr. 59. The ALJ assigned "great weight" to Dr. Puig's opinion that Plaintiff's medical condition did not meet any listing because "it is consistent with the clinical signs and the medical evidence." Tr. 35. Substantial evidence supports the ALJ's consideration and weighing of the medical opinions. See 20 C.F.R. § 404.1527(b).

## IV.  Conclusion

Based on the foregoing analysis, the Court concludes that the decision of the Commissioner that Plaintiff was not entitled to disability benefits was supported by substantial evidence. Therefore, the Commissioner's decision is hereby AFFIRMED.

IT IS SO ORDERED.

In San Juan, Puerto Rico, this 9th day of December, 2019.

s/Marcos E. López
U.S. Magistrate Judge

13